# In the United States Court of Federal Claims

Consl. Case Nos. 09-165C, 09-882C
Filed: November 10, 2015

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| EXXON MOBIL CORPORATION, | * * * * * * * * * * * * * * * * |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

28 U.S.C. § 455 (Judicial Disqualification);
28 U.S.C. § 1491(b)(1)
   (Tucker Act Jurisdiction);
28 U.S.C. § 1631
   (Transfer for want of jurisdiction);
Comprehensive Environmental Response,
   Compensation, and Liability Act
   ("CERCLA"), 42 U.S.C. § 9601 et seq.;
Contract Settlement Act of 1944,
   41 U.S.C. § 113(a) (repealed and replaced
   by Pub. L. 111-350, 124 Stat. 3677
   (2011));
Rules of the United States Court of Federal
   Claims ("RCFC")
   RCFC 8(c) (Affirmative Defenses),
   RCFC 26(b) (Scope Of Discovery),
   RCFC 37(a)(3)(B) (Motion To Compel
      Interrogatory Answers),
   RCFC 40.1(a) (Assignment On Recusal),
   RCFC 40.1(c) (Reassignment Of Case),
   RCFC 40.2(a)(2) (Related Case Rule).

**William Stephen Foster, Jr.**, Baker Botts L.L.P., Washington, D.C., Counsel for Plaintiff.

**Kenneth David Woodrow**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND ORDER REGARDING THE GOVERNMENT'S MOTION TO COMPEL INSURANCE-RELATED DISCOVERY

**BRADEN**, *Judge*.

On October 30, 2015, the undersigned judge issued a Memorandum Opinion and Order about a similar discovery dispute arising in a related, but earlier filed case, in the United States Court of Federal Claims. *See Shell Oil Co. et al. v. United States*, 2015 WL 6646972 (Fed. Cl. Oct. 30, 2015). Both cases concern the United States's ("the Government") breach of a contract entered into during World War II with certain oil companies to produce military aircraft fuel. The cases, however, differ. The parties entered into a stipulation in *United States v. Shell Oil Co.*, No. 091-0589 (C. D. Cal.) as to the percentage of response costs incurred for which the oil companies legally were responsible under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The Government received a final determination of liability for a breach of those contracts. *See Shell Oil v. United States*, 751 F. 3d 1282 (Fed. Cir. 2014).

In both cases, the Government has requested that the court compel discovery concerning Plaintiff's insurance policies, prior insurance coverage litigation, and any settlement amounts received. In *Shell*, the court determined that the Government failed, on numerous occasions to assert defenses and counterclaims in the United States Court for the Central District of California as well as the United States Court of Federal Claims and in the United States Court of Appeals for the Federal Circuit on a timely basis. In this case a similar resolution could be reached, however, the Government has already undertaken the requested discovery in the pending CERCLA case in the United States District Court for the Southern District of Texas.

## I.   RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY.[1]

### A.   Relevant Factual Background.

In 1942 and 1943, during World War II, the Government entered into contracts with the corporate predecessors of Exxon Mobil Corporation ("Exxon") to produce high octane aviation gasoline ("avgas") that would be used to fuel military aircraft ("Avgas Contracts").

> The Government considered avgas to be a "superfuel" that allowed airplanes to fly with more power, speed, quicker take-off, and was essential to victory in combat. The critical need for avgas prompted the Government to order oil refineries to maximize its production, which resulted in the Government contracting with [Exxon]'s Baytown and Baton Rouge refineries [(collectively, "the Sites")] for the production and supply of avgas. The [Sites] supplied avgas to the Government during World War II under the operation and ownership of Exxon[]'s predecessor companies. The [Sites] produced excessive amounts of avgas for the Government, which resulted in waste and other by-products of the petroleum refining process.

---

[1] The factual background and procedural history also have been discussed, in part, in *ExxonMobil Corp. v. United States*, 89 Fed. Cl. 628, 629–30 (2009) ("*Exxon I*"); *Exxon Mobil Corp. v. United States*, 101 Fed. Cl. 576, 577–79 (2011) ("*Exxon II*"); *Exxon Mobil Corp. v. United States*, 110 Fed. Cl. 407, 409–10 (2013) ("*Exxon III*"); and *Exxon Mobil Corp. v. United States*, 2015 WL 3513949, at *1–*14 (S.D. Tex. June 4, 2015) ("*Exxon Mobil*").

*Exxon II*, 101 Fed. Cl. at 577–78; *see also Exxon Mobil*, 2015 WL 3513949, at *1–*14 (providing a more detailed explanation of the history at Baytown, Texas and Baton Rouge, Louisiana of avgas production).

**B.    Initial Proceedings In The United States Court Of Federal Claims (March 18, 2009 – August 26, 2010).**

On March 18, 2009, Exxon Mobil Corporation ("Exxon or Plaintiff") filed a Complaint ("Compl.") in the United States Court of Federal Claims with two counts: Count I alleged that the Government's "refusal to pay and/or reimburse [Exxon] for the [response] costs [to investigate and remediate contamination at and in the vicinity of the Baytown, Texas site] materially breache[d] the Avgas Contracts;" Count II alleged that the Government's "failure to consider [Exxon's] claim for payment and/or reimbursement . . . constitutes a failure to provide speedy and fair compensation in violation of the Contract Settlement Act of 1944, 41 U.S.C. §§ 101 *et seq.*, for which Exxon Mobil is entitled to payment of 'fair compensation,' together with interest as provided under 41 U.S.C. § 106(f)." Compl. ¶¶ 23, 25.

That same day, Exxon filed a Notice Of Directly Related Case, indicating that "this action is directly related to *Shell Oil Company v. United States*, Case No. 06-141C . . . in that the claims in both actions 'involve the same contract.'" Notice at 1, Dkt. No. 2. Both cases were assigned to the former Senior Judge Loren A. Smith.

On April 15, 2009, the Government filed a Motion For Transfer[,] Pursuant To RCFC 40.1 and Response To Exxon's Notice Of Directly Related Cases, arguing that the Exxon case is not "directly related" to Docket No. 06-141C under RCFC 40.2(a)(2),[2] or in the alternative, that the case be transferred to the Clerk for Random Assignment under RCFC 40.1.[3] Motion For Transfer at 1, Dkt. No. 7. On April 29, 2009, Exxon filed a Response. On May 11, 2009, the Government filed a Reply.

On May 18, 2009, the Government filed an Answer.

On November 3, 2009, the court issued an Opinion And Order denying the Government's April 15, 2009 Motion. *See Exxon I*, 89 Fed. Cl. at 630 ("[B]ecause these contracts share a similar and unique historical and factual background, and identical indemnification provisions, the cases are directly related and this case is properly before this Judge.").

On December 12, 2009, Exxon filed a second Complaint in the United States Court of Federal Claims. ("Compl. No. 09-882") with two counts: Count I alleged that the Government's

---

[2] RCFC 40.2(a)(2), in relevant part, provides that "cases are directly related when: (A) they involve the same parties and are based on the same or similar claims; or (B) they involve the same contract, property, or patent." RCFC 40.2(a)(2).

[3] RCFC 40.1, in relevant part, provides, "After a complaint is served on the United States, or after recusal or disqualification of a judge to whom the case is assigned, the case will be assigned (or reassigned) to a judge at random." RCFC 40.1(a).

"refusal to pay and/or reimburse [Exxon] [for response costs at the Baton Rouge Site] materially breaches the Avgas Contracts." Compl. No. 09-882 ¶¶ 22–24; Count II alleged that the Government's "failure to consider [Exxon's] claim for payment and/or reimbursement constitutes a failure to provide speedy and fair compensation in violation of the Contract Settlement Act of 1944, 41 U.S.C. §§ 101 *et seq.*, for which ExxonMobil is entitled to payment of 'fair compensation,' together with interest as provided under 41 U.S.C. § 106(f)." Compl. No. 09-882 ¶ 26.

On March 8, 2010, the Government filed an Answer to Exxon's December 12, 2009 Complaint. The Government conducted no discovery thereafter.

On August 26, 2010, the court consolidated Case Nos. 09-165 and 09-882. Order at 1, Dkt. No. 22.

C.      **Proceedings In The United States District Court For The Eastern District Of Virginia Transfer To The United States District Court For The Southern District Of Texas (March 29, 2010 – September 30, 2013).**

On March 29, 2010, Exxon also filed a Complaint ("Compl. No. 10-2386") in the United States District Court for the Eastern District of Virginia with three counts. Count I alleged, "pursuant to Section 107(a) of [CERCLA], 42 U.S.C. § 9607(a), the [Government] is liable to [Exxon] for the necessary response costs that [Exxon] has incurred and will incur consistent with the [National Contingency Plan] . . . in connection with the Baytown Site, plus appropriate pre-judgment interest." Compl. No. 10-2386 ¶ 41. Count II, alleged, that the Exxon is entitled to "contribution from the [Government] for all or part of [Exxon's] necessary response costs incurred or to be incurred in performing the response actions," pursuant to 42 U.S.C. § 9613(f)(3)(B). Compl. No. 10-2386 ¶ 50. Count III requested a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2) and 28 U.S.C. §§ 2201–2202. Compl. No. 10-2386 ¶ 54.

On April 29, 2010, the Government filed a Motion To Transfer Case No. 10-2386 to the United States District Court for the Southern District of Texas ("Texas District Court"). On June 24, 2010, the United States District Court for the Eastern District of Virginia issued an Order granting the Government's April 29, 2010 Motion. On July 6, 2010, that case was transferred to the Texas District Court.

On July 16, 2010, the Government filed an Answer And Counterclaim in the Texas District Court stating:

> If the Court determines that the United States is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), it should allocate the costs at issue in the Complaint between the two parties using such equitable factors as the Court determines are appropriate under 42 U.S.C. § 9613(f)(1), and grant appropriate declaratory relief under 42 U.S.C. § 9613(g)(2) and 28 U.S.C. § 2201.

Gov't Ans. ¶ 15, Exxon Mobil Corp. v. United States, 2015 WL 3513949 (S.D. Tex. June 4, 2015) (No. H-10-2386).

On August 5, 2010, Exxon filed a Response To The Government's July 16, 2010 Answer and Counterclaim.

On September 24, 2010, the Government filed a Motion To Stay.  On October 14, 2010, Exxon filed a Response In Opposition.  On December 9, 2010, the Texas District Court denied the Government's Motion To Stay.

On May 12, 2011, Exxon filed a second Complaint ("Compl. No. 11-1814") in the Texas District Court that contained two counts: Count I alleging that the Government is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), "for the necessary response costs that [Exxon] has incurred and will incur consistent with the NCP in connection with the Baton Rouge Site, plus appropriate pre-judgment interest."; and Count II, requesting a declaratory judgment.  Compl. No. 11-1814 ¶¶ 38, 40.

On July 12, 2011, the Government filed an Answer And Counterclaim.  On August 1, 2011, Exxon filed an Answer To The Government's Counterclaim.

On August 12, 2011, the Texas District Court entered an Order Consolidating Case Nos. 10-2386, and 11-1814.  Order at 3, Exxon Mobil Corp. v. United States, 2015 WL 3513949 (S.D. Tex. June 4, 2015) (No. 10-2386).

On April 10, 2013, the Government filed an Opposed Motion For Leave To File First Amended Answer And Counterclaims.  On May 1, 2013, Exxon filed a Response In Opposition. On May 8, 2013, the Government filed a Reply.  On July 9, 2013, the Texas District Court issued a Memorandum And Order granting the Government's April 10, 2013 Opposed Motion For Leave To File First Amended Answer And Counterclaims.

On September 30, 2013, Exxon filed a Motion For Partial Summary Judgment.

**D.**     **Proceedings In The United States Court of Federal Claims (March 2, 2011 – Present).**

Meanwhile, on March 2, 2011, Exxon filed a Motion For Partial Summary Judgment As To Liability, arguing that the United States Court of Federal Claims "should find and rule by summary judgment that the Government is liable to [Exxon] for reimbursement of any environmental cleanup costs incurred by [Exxon] that it was required to pay 'by reason of the production, manufacture, sale or delivery' of Avgas under the Avgas Contracts."  Motion at 4, Dkt. No. 28.

On April 8, 2011, the parties filed a Joint Proposal For Discovery.  On April 15, 2011, the court convened a telephone status conference and entered a Scheduling Order concerning discovery.

On May 13, 2011, the Government filed: a Response to Exxon's March 2, 2011 Proposed Findings Of Uncontroverted Fact; a Declaration By The Government's Counsel, Mr. Kenneth Woodrow; a Cross-Motion For Summary Judgment And Response To Exxon's March 2, 2011

Motion For Partial Summary Judgment As To Liability; and Proposed Findings Of Uncontroverted Fact.

On June 13, 2011, Exxon filed: a Reply In Support Of Its March 2, 2011 Motion For Partial Summary Judgment As To Liability And Response To The Government's May 13, 2011 Cross-Motion; and a Response to the Government's May 13, 2011 Proposed Findings Of Uncontroverted Fact.

On July 15, 2011, the Government filed a Reply to Exxon's June 13, 2011 Response.

On October 31, 2011, the court issued an Opinion And Order Granting Plaintiff's March 2, 2011 Motion For Summary Judgment As To Liability And Denying The Government's May 13, 2011 Cross-Motion.  *See Exxon II*, 101 Fed. Cl. at 579–81.

On January 26, 2012, the parties submitted a Revised Joint Proposal For Discovery and on January 31, 2012, the court adopted it and entered a Scheduling Order.

On May 4, 2012, Exxon filed an Unopposed Motion To Amend Schedule that the court granted on May 7, 2012.

On November 11, 2012, Exxon filed a second Unopposed Motion To Amend Schedule that the court granted on November 16, 2012.

On January 3, 2013, the Government filed a Motion For Recusal Or For Transfer, because Senior Judge Smith revealed that recently he learned that his wife owned stock creating a conflict of interest in violation of 28 U.S.C. § 455.[4]  On January 11, 2013, the court scheduled a telephone oral argument.  On January 22, 2013, Plaintiff filed a Response.  On January 24, 2013, the Government filed a Reply.

---

[4] Section 455 of the Act of June 25, 1948, in relevant part, provides:

   (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

   (b) He shall also disqualify himself in the following circumstances:

* * *

   (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

28 U.S.C. § 455.

On April 16, 2013, the court issued an Opinion And Order, denying the Government's January 3, 2013 Motion To Recuse.  *See Exxon III*, 110 Fed. Cl. at 415 ("This court similarly finds that *Shell* cannot be read for the proposition that the interest at issue here creates a conflict of interest that mandates recusal under the statute.  The case at hand involves a different fact pattern, and different parties than that in the *Shell* matter.  Additionally, there is no interest in ExxonMobil being held by the judge or his wife. Thus, there is no conflict of interest requiring recusal.").

On July 10, 2013, Exxon filed a Proposed Schedule For Damages and the court subsequently convened a telephone status conference and entered a Scheduling Order for discovery on damages.

On August 29, 2013, former Chief Judge Emily C. Hewitt entered an Order directing the Clerk randomly to reassign this case, pursuant to RCFC 40.1(c).[5]  The case was reassigned to the undersigned judge.

On September 27, 2013, the court convened a telephone status conference.  On September 30, 2013, the court entered an Order Vacating Scheduling Order of July 10, 2013.

On February 5, 2014, Exxon filed another Status Report discussing: "(1) the relationship between the damages sought in [this] case . . . and those sought in the cases currently pending before . . .  the U.S. District Court for the Southern District of Texas, *Exxon Mobil Corp. v. United States*, Case Nos. 10-2386, 11-1814 . . . ; and (2) the potential relevance of the [*Shell*] decision in the U.S. Court of Appeals for the Federal Circuit[.]"  Status Report at 1, Dkt. No. 81. On February 7, 2014, the parties filed a Joint Proposed Discovery Schedule for the damages phase of the litigation.  On February 10, 2014, the court held a telephone status conference and entered a Discovery Scheduling Order, extending discovery through April 3, 2015.  On February 21, 2014, the Government filed a Status Report to "explain the relevance of the pending appeal in *Shell* . . . ; and (2) provide a statement concerning the relationship between these actions and the pending cases in the United States District Court for the Southern District of Texas, *ExxonMobil Corp. v. United States*, Case Nos. 10-2386, 11-1814[.]"   Gov't Status Report at 1, Dkt. No. 84.  In the February 21, 2014 Status Report, the Government stated that: "The pending appeal in *Shell* almost certainly will be dispositive of the issues before the [c]ourt in this case."  Gov't Status Report at 1, Dkt. No. 84.

On May 5, 2014, Exxon filed a Status Report to inform the court about the United States Court of Appeals for the Federal Circuit's recent decision in *Shell Oil Co. v. United States*, 751 F.3d 1282 (Fed. Cir. 2014).  Exxon stated that the decision "decided two central issues in this case: (1) the term 'charges' in the reimbursement provision of the [A]vgas [C]ontracts properly includes CERCLA costs; and (2) the ADA does not bar recovery under the reimbursement provision."  Pl. Status Report at 5, Dkt. No. 85.

---

[5] RCFC 40.1(c) provides, "The chief judge may reassign any case upon a finding that the transfer is necessary for the efficient administration of justice."  RCFC 40.1(c).

On August 14, 2015, the Government filed a Motion To Compel Responses To Insurance-Related Discovery ("Gov't Mot."), pursuant to RCFC 37,[6] "request[ing] that the [c]ourt enter an order compelling . . . Exxon[] . . . to answer interrogatories and to respond to the Government's requests for admission and for production served February 12, 2015."  Gov't Mot. at 1, Dkt. No. 90.

On September 15, 2015, Exxon filed a Response To The Government's August 14, 2015 Motion To Compel Responses to Insurance-Related Discovery ("Pl. Resp."), together with three attachments ("Pl. Att. 1–3").  On September 25, 2015, the Government filed a Reply ("Gov't Reply").

On October 23, 2015, the court convened an oral argument concerning the Government's August 14, 2015 Motion To Compel ("10/23/15 TR1–31").

## II.    DISCUSSION.

### A.    Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . .  [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . .  [T]hat source must be 'money-mandating.'").  Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400).  And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)

---

[6] RCFC 37, in relevant part, provides, "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made if:  . . . (iii) a party fails to answer an interrogatory[.]"  RCFC 37(a)(3)(B).

("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

The December 12, 2009 Complaint filed by Exxon alleges that the Government breached the Avgas Contracts.  Compl. 09-882 ¶¶ 23, 24.  Accordingly, the court has jurisdiction to adjudicate Exxon's alleged breach of contract claims.

## B.      Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992)).  The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan*, 504 U.S. at 560–61.  Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180–81 (2000) (citations omitted).

The December 12, 2009 Complaint alleges that Exxon suffered monetary injury that is concrete, particularized, and fairly traceable to the Government's breach of the Avgas Contracts. Compl. 09-882 ¶¶ 15-18, 24.  Any injury incurred by Exxon can be redressed by a monetary award.

For these reasons, the court has determined that Exxon has standing to seek adjudication of the claims alleged in the December 12, 2009 Complaint.

## C.      The Government's August 14, 2015 Motion To Compel Responses To Insurance-Related Discovery.

### 1.      The Government's Argument.

The Government argues that it should be permitted to seek discovery about Exxon's insurance policies, environmental coverage litigation, and settlements for three reasons: (1) the requested discovery is necessary to determine whether the Government should assert an offset defense or counterclaim; (2) the discovery request is timely and does not prejudice Exxon; and (3) the Government has not waived its right to this discovery.  Gov't Mot. at 2.

The Government also asserts that discovery relating to Plaintiff's insurance payments is timely, because "courts routinely permit defendants to seek or assert offsets for previously reimbursed damages[.]" Gov't Mot. at 9.  The Government adds that, it was not aware of Exxon's insurance until sometime in late November 2012, when Exxon produced insurance information in response to discovery in the CERCLA case pending before the Texas District Court.  Gov't Mot. at 10.  In response, the Government served discovery requests on December 5, 2014 and on February 12, 2015.  Gov't Mot. at 12.  As such, "the Government has not waived the right to seek a setoff to prevent double recovery."  Gov't Mot. at 12.

9

On rebuttal, the Government replies that Exxon is not entitled to recover damages, because it previously recovered from its insurers.  Gov't Reply at 4.  The Government also contends that the collateral source rule does not apply, because this is a breach of contract case, not a tort.  Gov't Reply at 5 (citing *LaSalle Talman Bank FSB. v. United States*, 317 F.3d 1363, 1372 (Fed. Cir. 2003)).  Likewise, the rule against remote transactions does not apply, because insurance agreements are not remote transactions and the settlement of coverage litigation was "a direct result of the alleged breach."  Gov't Reply at 11.

### 2.  Plaintiff's Response.

Exxon's September 15, 2015 Response counters that: (1) the Government's offset defense is an untimely affirmative defense that has been waived; (2) the collateral source rule bars the Government's offset defense; and (3) the remote transactions rule prohibits the Government's offset defense.  Pl. Resp. at 8–24.

First, the Government has been on notice about Exxon's insurance agreements since a July 15, 2004 settlement letter was sent to the United States Department of Justice ("DOJ"), disclosing that Exxon had been "partially indemnified for its cleanup costs" at the Baytown refinery.  Pl. Att. 1, at 4.  Second, in a January 6, 2010 settlement letter, Exxon also disclosed that it had been "partially indemnified for its cleanup costs" at the Baton Rouge refinery.  Pl. Att. 2, at 4.  Both of these letters were provided to the Government, before it filed its March 8, 2010 Answer in this case.  Pl. Resp. at 4–5.  Third, beginning in 2012, in related Baytown and Baton Rouge CERCLA cases before the Texas District Court, Exxon produced "numerous historical insurance policies, a coverage chart, and some of the pleadings and other documents from the prior insurance coverage litigation."  Pl. Resp. at 5–6.  Yet, it was not until December 2014 that the Government served insurance-related discovery requests on Exxon in this case.  Pl. Resp. at 6.  Since the Government had "actual knowledge of a potential insurance offset as early as 2004," Exxon argues that the Government should have raised any insurance offset defense in its March 8, 2010 Answer, because "an insurance offset [is] an affirmative defense that the ["Government"] defendant must specifically plead in the Answer[.]"  Pl. Resp. at 9.  The Government did not do so and therefore has waived any intervening offset defense.  Pl. Resp. at 8–10.

Exxon adds that to allow the Government to proceed with an offset defense and conduct related discovery would be prejudicial at this juncture.  Pl. Resp. at 12.  "The courts have consistently held that delay and prejudice are coextensive[.]"  Pl. Resp. at 12.  There has been a "five-year delay between the filing of the Complaints and Answers and the Government's tardy attempt to raise an offset defense[.]"  Pl. Resp. at 13.  Moreover, insurance-related discovery would be "excessively burdensome," requiring Exxon "to search for insurance-related information and documents spanning a 75-year period," "potentially requir[ing] the production of hundreds of thousands of documents."  Pl. Resp. at 13.  Moreover, the insurance documents for the Baytown and Baton Rouge Sites "are commingled with the documents related to" over 2,000 other sites.  Pl. Resp. at 13–14.

Exxon also contends that the Government's offset defense is barred by the collateral source rule and the rule against using remote transactions.  Pl. Resp. at 15, 20.  "Under the collateral source rule 'collateral benefits received by the injured party do not reduce the damages owed by the wrongdoer.'"  Pl. Resp. at 16 (quoting *LaSalle Talman Bank*, 317 F.3d at 1372).  Here, because

the Government "intentionally breach[ed] the [A]vgas [C]ontracts by refusing to pay Exxon[] for its environmental cleanup costs . . . the Government qualifies as a 'wrongdoer' subject to the collateral source rule." Pl. Resp. at 17. Under the rule against using remote transactions, recoveries under pre-existing insurance policies are "not the proximate result of the breach of the contract . . . and therefore these recoveries are disregarded in the calculation of damages[.]" Pl. Resp. at 20–21 (citing *Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533–34 (1918) ("The general tendency of the law, in regard to damages . . . , is not to go beyond the first step."). "The Government was not a party to the insurance transactions and did not fund any of the insurance premiums[.]" Pl. Resp. at 23. Because the insurance agreements are remote transactions, the rule against using remote transactions bars the Government's offset defense. Pl. Resp. at 24.

### 3.      The Court's Resolution.

On June 4, 2015, the Texas District Court issued a Memorandum and Opinion Granting-In-Part and Denying-In-Part Exxon's and the Government's Cross-Motions for Partial Summary Judgment regarding Phase I liability and allocation under CERCLA. *See Exxon Mobil*, 2015 WL 3513949 at *1, *44. In addition, that court issued a declaratory judgment that "the United States is liable for its equitable share of past and future cleanup costs incurred at the Baytown and Baton Rouge sites. The equitable allocation of fault and costs will be determined in Phase II [of this case.]" *Id.* at *44. Although the Texas District Court declined to adopt either parties' equitable allocation methodology, the Opinion contains a thorough discussion about the equitable factors that can be considered under 42 U.S.C. § 9613(f)(1). *Id.* at *41–*42. Among these CERCLA §113(f)(1) factors the Texas District Court includes, "[t]he potential for windfall 'double recoveries' by a plaintiff." *Id.* at *42 (internal citations omitted).

During oral argument, the Government confirmed that it elected first to pursue discovery about Exxon's insurance coverage litigation in the Texas CERCLA case. 10/23/15 TR at 6–7. But the Government is not correct in subsequently advising this court that "[t]he burden is now on Exxon to prove why that money should not count against its recovery here." 10/23/15 TR at 7. The proper venue for addressing this issue, certainly in the first instance, is in the United States District Court for the Southern District of Texas.

## III.      CONCLUSION.

For these reasons, the Government's August 14, 2015 Motion To Compel Responses To Insurance-Related Discovery is **denied**. The Government should pursue the discovery it requests in the Texas District Court. In addition, the evidentiary hearing on damages scheduled for February 29, 2016 is cancelled and this case is stayed pending final disposition of Civil Action Nos. H-10-2386, H-11-1814 in the Southern District of the United States District Court of Texas, Houston Division.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**